**STATE, Plaintiff-Appellee v. HAGERT, Defendant-Appellant.**

Court of Appeals, Eighth District, Cuyahoga County.

No. 19598.  Decided May 2, 1944.

Frank T. Cullitan, County Prosecutor, Cleveland, John J. Mahon, Asst. Prosecutor, Cleveland; Gertrude M. Bauer, Asst. Prosecutor, Cleveland, for plaintiff-appellee.

Edward Lurie, Cleveland, Roy C. Green, Cleveland, for defendant-appellant.

(Montgomery, P. J., Sherick, J., of the 5th District; Doyle, J. of the 9th District sitting by designation in the 8th Appellate District)

## OPINION

BY DOYLE, J.

The appellant stands convicted of murder in the first de-

gree and is under sentence to death in the electric chair.

He prays for a reversal of the judgment and presents as his reasons the following assignments of error:

1. That the court erred in the admission (in evidence) of the sanity verdict returned in the preliminary hearing.

2. That the court erred in the admission of evidence of prior crimes, including the testimony of the Lees boy and the Buchanan boy.

3. That the court erred in permitting expert witnesses to give their opinion that the defendant had the mental capacity to form an intent to commit murder in the first degree.

4. That the court erred in the admission in evidence of photographs of both the Collins boys after the homicide.

5. That the court erred in the admission in evidence of the written confession as made out of court.

6. That the court erred in admitting other evidence offered by the state over defendant's objection.

7. That the court erred in the exclusion of evidence offered by the defendant, to which the defendant duly excepted.

8. That the court erred in charging the jury, and particularly in the refusual of the court to charge on the degrees of homicide other than first and second degree murder.

9. That the court erred in overruling defendant's motion for a new trial on the ground that the verdict of the jury is against the manifest weight of the evidence and is contrary to law.

10. That the court erred in overruling defendant's motion to set aside the verdict of the jury on the preliminary hearing.

11. For other errors apparent on the face of the record.

The evidence discloses that on August 11, 1943 a 9 year old boy by the name of Buchanan had disappeared while on his way to Lakewood Park in Cuyahoga County; police search commenced and on the following morning he was found lying in a semi-conscious condition in a wooded area near Bay Village. Efficient police investigation, coupled with the assistance of a newspaper reporter, culminated in the arrest of the accused, a 17 year old boy who had been under observation by the authorities as a psychopathic case and who had also been confined in a state institution for delinquent boys.

After a denial of any knowledge of the 9 year old boy, the accused subsequently admitted that he had kidnapped him, and in the course of the examination then said, "the gun you just took away from me is the one I killed the other two boys with." He referred to a .32 caliber Colt automatic gun taken from his person by the officers. He thereupon conducted the

officers to a wooded section of Bay Village, a westerly suburb of Cleveland and to the bodies of James and Charles Collins, twins of the age of twelve. The children had been shot to death.

There is evidence in the record to prove that the accused had committed unnatural sexual assaults to-wit, sodomy, upon the kidnapped Buchanan boy the day previous to the day of the homocides; that prior to this he had likewise perpetrated the crime of rectal sodomy upon a young 12 year old boy by the name of Lees. The evidence further justifies the conclusion that he attempted the same crime upon one of the victims, and upon being repulsed he took his life. He then ordered his second victim into the woods and killed him in the same manner.

The detail of events immediately preceding the homicides revealed in the confession is ably and accurately summarized by counsel for the defense in the following language:

"About 11 o'clock, on the morning of this date, the defendant was operating an automobile in an easterly direction in Rocky River and saw two boys at the side of the street who were apparently thumbing a ride. The defendant turned his automobile around and went back and took them in. He drove them to what is known as Sadler Road which runs southerly from Lake Road in Bay Village. * * * As to the circumstances of the homicide we know nothing, except what is contained in the purported confession of the defendant and statements which he made to the psychiatrists who examined him. In his confession, the defendant states that after seeing them he turned around and picked them up. The boys said they were going to some golf course. After getting in the car one boy made the remark, 'onward Jeeves' and the defendant then states that he put a gun on them; that he went down Lake Road and then turned down a side road. He told one of them, 'come with me' and told the other one that if he tried to get away he would shoot him. He then took one boy into the woods and, after so doing, the defendant stopped, and, after stopping, he told the boy to keep walking. When the boy was about fifty feet away he shot him. The defendant then returned to the car and got the second boy out of the car and told him to come with him. He walked him back to the woods a little ways and the defendant stopped. He states that the boy did not know that he, the defendant, had stopped and kept on walking. When the boy was near a turn in the path, he

shot him in the back of the head. The defendant then went back into his car and went home."

Supplementing the recital of event in the confession are the additional statements made to doctors and officials which depict in somewhat detail the defendant's sadistic and sodomitical orgies; and further, the evidence, as heretofore stated, which justifies the conclusion that the first boy was killed when he repulsed the defendant's criminal advances.

There is further evidence in the record which justifies the conclusion that the second boy was killed for the purpose of silencing forever the lips of an incriminating witness.

After the accused was indicted, doctors were appointed by the court to investigate his sanity under authority of §§13441, 13441-1 GC. He then was accorded a jury trial for the purpose of determining his sanity. The verdict found him to be presently sane. Shortly thereafter he was arraigned on the indictment and entered a plea of "not guilty by reason of insanity." The jury trial on the indictment resulted in a verdict of murder in the first degree without a recommendation of mercy and upon the overruling of a motion for a new trial, judgment was entered and the defendant sentenced to death.

At this point it is proper to note that the defendant was represented by two eminent lawyers who had been appointed by the court. They deserve the highest praise for their extraordinary devotion to the interests of their client and for their indefatigable and able labor in preserving for him every legal right to which he was entitled.

1. The first error assigned relates to the admission in evidence of the verdict of the jury in the preliminary sanity hearing.

It is argued that the evidence is sufficient to prove the defendant a victim of dementia praecox, and that while one afflicted with this condition may exhibit extraordinary intelligence, yet he may be afflicted with a definite psychosis of such a character as to be irresponsible for his conduct. Therefore, one might meet the tests of sanity on a preliminary hearing, testing his present sanity, yet not know the difference between right and wrong, or, having such knowledge, not be possessed of the inhibitory capacity to refrain from doing wrong, which are tests of legal sanity in its relation to crime; and this being so, the two jury trials are not based upon the same principles.

There is no doubt of the soundness of this argument if the verdict in question precluded the jury impaneled in the

murder case from considering the defense of insanity. But such fact does not appear in the record. I quote from the court's instruction to the jury:

"Members of the jury, this exhibit is received in evidence and may be considered by you as evidence tending to show the defendant's state of mind at the time of the killing charged in the indictment. I say to you, however, that the verdict of the jury in the hearing on the question of the defendant's then present sanity is not conclusive evidence upon the question which you are to decide, nor is it prima facie evidence upon that question. It is one item of evidence to be considered by you, together with all of the other evidence in the case, bearing upon the question of the defendant's sanity or insanity at the time the alleged crime was committed."

And further in the charge:

"Among the exhibits which the court permitted to be introduced as part of the evidence is the verdict of the jury in the preliminary hearing in this case on the question of the defendant's present sanity. I have heretofore instructed you that this verdict is not conclusive evidence of the defendant's state of mind at the time he killed the Collins boy nor is it to be considered prima facie evidence of that fact. I· have also indicated to you that the tests of the present sanity of the defendant, so determined by the jury in the former hearing, were different from those which are to be applied by you in the determination of the defendant's state of mind at the time of the killing. You will consider what I have heretofore said to you in this connection, and it is for you to determine the weight which shall be given to the verdict of the jury in the former hearing on the question of the defendant's present sanity as it relates to the question which you are to determine in this case. The verdict of the jury in the former hearing is, under the instructions I have given to you, part of the evidence relating to the question of the defendant's sanity or insanity as of the time of the killing, and it is for you to determine the weight and the credit of all of the evidence bearing upon that, as well as the other aspects of the case."

The charge is, in all repects, complete and proper and certainly the clear language employed by the trial judge could leave no uncertainty in the minds of the members of the jury

of the former verdict's relative importance to other evidence in the case bearing on the same subject-matter.

We hold the evidence proper and the instructions pertaining thereto in conformity to established principles of law.

Compare: **Moffett v State, 32 O. C. A. 337, Bradshaw v State, 31 O. App. 458.**

2. Did the court err in the admission of evidence of prior crimes, "including the testimony of the Lees boy and the Buchanan boy?"

There is evidence which tends to prove that in June or July of 1943 the accused committed the act of sodomy upon the 12 year old Lees boy and threatened his life if he revealed the crime; that he abducted and kidnapped the 9 year old Buchanan boy; brutally assaulted him and feloniously committed the act of sodomy upon him, and in a statement to one of the doctors said that he intended to kill him (Buchanan) to prevent him from "squealing"; that he attempted to assault, by sodomy, Charles Collins the first of his last two victims, and that when his advances were resisted he executed him; that he then returned to his automobile and took his last victim, James Collins into the woods, where he killed him because he was afraid he would 'squeal on him.'

James Collins, the last boy killed, is named in the indictment as having been murdered by the defendant. It was incumbent on the state to prove an intent to kill. Under such circumstances it was competent to prove collateral offenses which reflected upon the mental processes of the accused and which tended to throw light upon the motive behind the crime. While motive is not an element of crime, nevertheless, it has a direct bearing upon intent. As applied to the accused in this case, it referred to the elimination of a dangerous witness to the crime, which conduct followed a preconceived plan as revealed in his threats of murder following his previous sex perversions.

It requires no borrowed light to conclude that the legislature of this state meant §13444-19 GC. to apply to this type of a case. The code section reads:

"In any criminal case where the defendant's motive, intent, the absence of mistake or accident on his part, or the defendant's scheme plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing

the act in question, may be proved whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant."

The evidence was properly admitted and properly confined by the trial court in the following language:

"The testimony, therefore, relating to the Buchanan and the Lees incidents are to be considered by you only as bearing upon the motive of the defendant in committing the crime charged in the indictment, and as reflecting upon his state of mind at the time of the shooting, and for no other purposes * * *."

We find no error in this respect. See: **State v Hensley, 31 Abs. 348** (9th Dist. Court of Appeals 1939); **State v Hahn, 59 Oh Ap 178; Whiteman v State, 119 Oh St 285.**

3. This assignment of error charges the court with unlawfully permitting expert witnesses to give their opinion that the defendant had the mental capacity to form an intent to commit murder in the first degree.

The record does not support this claim.

The answers of these expert witnesses, in reply to questions propounded, were that the accused at the time of the killing knew the difference between right and wrong; knew the nature and quality of the act when he murdered the Collins boys; had the capacity of mind, knowing the difference between right and wrong, to choose between the doing of right and wrong; and had the capacity of mind "to form a criminal intent—the intent to murder the Collins boys."

The appellant infers from the nature of the questions and answers that when the word "murder" was used, the inference may be properly drawn that first degree murder was meant and that the witnesses so understood.

It must be observed that these witnesses were testifying only to the defendant's capacity to commit an intentional crime. The word "murder" as used in the questions was used in the sense of being synonomous with the word "kill," and there can be no doubt that the jury and the witnesses so understood.

It does not appear that the propounded questions required the witnesses to know the difference between the various degrees of homicide, as claimed by counsel, as a basis for their answers, and we find no error of a prejudicial nature in this assignment.

4. Error in the admission in evidence of photographs of the Collins boys after the homicide.

Accurate photographs, like maps or diagrams, are witnesses' pictured expressions of the data observed by them, and therein communicated to the jury and the court more accurately than by words.

The exhibits of which complaint is made were photographs of the two boys lying in a heavily forested, dark and shady part of the county. The testimony showed them to be accurate pictures.

It was entirely relevant and competent to show that the alleged crime was committed in a secluded and out of the way place, where there would be little chance of interruption. Persons do not usually commit crimes of violence in the open. The evidence had a bearing on the mental processes of the accused in his selection of the stage for the perpetration of his crime, and had a distinct bearing on the questions of deliberation and premeditation.

The defendant cannot be heard to complain because the photographs are not pleasant to look upon and for that reason he was prejudiced in the eyes of the jury because of the revulsion of feeling that may have been caused by the pictures. The entire record is a succession of ghastly verbal pictures and whatsoever is revolting in the facts of the case inheres in and is an inseparable part of such facts created by the defendant, and he may not now complain thereof.

It must be remembered that the state was at all times put upon proof of its case, and it was entitled to prove as far as possible every element of the crime charged, even though the accused admitted the killings.

**17 O. Jur. Evidence §472**

**21 O. Jur. Homicide §80**

5. This ground of error relates to the admission in evidence of the written confession as made out of court.

We have examined closely this exhibit, its validity as an exhibit and the circumstances surrounding its admission. We find it to have been in all respects legally obtained and to be entirely competent. It is true that the statements contained

therein are in most instances repetitions of statements made to witnesses who gave testimony on the same subject-matter. Nevertheless, even though the killing was admitted, the state was required, as heretofore stated, to introduce strict proof of every element of the crime charged. The accused had plead not guilty, and, while the words "by reason of insanity" were added to the plea, the only effect of this was to require the state, in addition to proving the elements of the crime .charged, to counterbalance the defendant's evidence on that issue.

See, **State v Knapp, 70 Oh St 380, State v Hensley, supra.**

The remaining charges of error have been debated by the members of this court, and we find none to be of a prejudicial nature. There is no evidence in the record to have warranted the court in submitting to the jury the question of manslaughter, assault and battery, or assault. Under the evidence, the defendant was either guilty or not guilty of murder. He was guilty of an intentional homicide, unless he was legally insane at the time. The law on this subject is well established. The submission to a jury of an included offense under an indictment for murder in the first degree, where there is no evidence to support such included offense, is error highly prejudicial to the rights of the state. The court did not err in eliminating the question of manslaughter.

We read in the record before us, a difficult trial, conducted by lawyers of ability and courage, and with each side fairly and considerately presenting evidence tending to support their respective claims. The record further shows a trial judge with an excellent knowledge of the many difficult legal points involved, and a capacity to clearly present and accurately explain them to the jury.

We have no difficulty in determining that the jury was warranted in finding that the state had proven each and every element of murder in the first degree beyond a reasonable doubt, and that the defendant had failed to prove his claim of insanity.

Under these circumstances, and with a record showing no error prejudicial to the rights of the accused, the judgment under review is affirmed.

Judgement affirmed.

MONTGOMERY, PJ, SHERICK, J., concur.